IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. **3:19-CR-189-L** |
| | § | |
| **SEAN SHAUGHNESSY** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion to Suppress ("Motion" or "Motion to Suppress") (Doc. 92), filed August 16, 2022; and Defendant's Motion for Leave to File Reply Brief ("Motion for Leave") (Doc. 99), filed September 26, 2022. For the reasons herein explained, the court **grants** Defendant's Motion for Leave (Doc. 99) and **denies** his Motion to Suppress (Doc. 92).

I.      **Factual and Procedural Background**

The Second Superseding Indictment (Doc. 82) in this case, which was filed on July 26, 2022, charged Defendant Sean Shaughnessy ("Defendant" or "Defendant Shaughnessy") with conspiring to distribute controlled substances and analogues,[1] laundering the proceeds from drug sales, and receipt of child pornography. While the court was drafting this memorandum opinion and order, the Government filed a Third Superseding Indictment (Doc. 101) on April 25, 2023.[2] The Motion to Suppress pertains to Defendant Shaughnessy's arrest on July 17, 2016, by Irving Police Department ("IPD") officers, and the subsequent search of his motel room and vehicle on the same date that was performed pursuant to an arrest warrant obtained based on the affidavit of

---

[1] Counts 1 through 4 of the Second Superseding Indictment charged Defendant with conspiring to distribute a mixture or substances containing a detectable amount of a controlled substance or analogue of: Fentanyl ("fent"), Carfentanil, Pentedrone, Methoxyacetyl Fentanyl ("MAF"), FUB-144, and N-Ethylhexedrone.

[2] The Government advised the court's courtroom deputy that the Third Superseding Indictment merely clarifies the existing charges against Defendant without adding anything new of substance. The Government further advised that the defense was made aware of these changes, and that both parties agree that the changes will not affect the current trial setting.

IPD Investigator Timothy Hilton.  Defendant moves to "suppress any and all evidence obtained from the unlawful seizure of [him] and the subsequent unlawful search of his person, motel room, and vehicle." Def.'s Mot. 22.  He also requests an evidentiary hearing.

The "Background" section of the Motion to Suppress includes facts regarding Defendant Shaughnessy's arrest or "seizure" and the arrest warrant subsequently obtained to search the motel room where he was arrested and his vehicle.  The "Argument and Authorities" section of the Motion to Suppress, however, focuses only on the lawfulness of the warrant obtained to search Defendant's motel room and vehicle.  On September 26, 2022, Defendant moved to file a reply brief, which expanded on earlier arguments in his Motion and included new factual and legal arguments regarding the validity of his arrest that were not previously made.

## II.     Motion for Leave to File Reply

For the first time in his proposed reply brief, Defendant Shaughnessy argues that his July 17, 2016 arrest and detention were unconstitutional.  The Motion for Leave does not include a certification of conference, but no response in opposition was filed by the Government, so the court treats it as unopposed and **grants** Defendant's Motion for Leave (Doc. 99).  Although the new issue regarding the constitutionality of Defendant's arrest and detention was not adequately raised or briefed in his Motion to Suppress, the court need not delay resolution of this issue or his Motion to Suppress pending further briefing, as the Government's response addressed the issue, apparently out of an abundance of caution, and it has not sought to file a surreply.

## III.    Motion to Suppress

Even considering Defendant's reply brief, the court determines, after considering the parties' briefs and evidence, that his Motion to Suppress (Doc. 92) should be and is hereby **denied** for the reasons that follow.

*Memorandum Opinion and Order – Page 2*

### A. Validity of Arrest

#### 1. The Parties' Arguments

In his Motion to Suppress, Defendant Shaughnessy asserts as follows regarding his arrest:

On July 17, 2016, Irving Police Officer John Thomas (#556) entered [his] motel room based on an unconfirmed out-of-state Michigan warrant and arrested [him] inside his motel room based on his reasonable suspicion that a bag of white powder that fell out of [his] pocket was "probably" cocaine (without conducting a field test on the bag of white powder prior to [his] arrest or at any time prior to the issuance of the search warrant to establish probable cause that the white powder was actually cocaine).

According to the offense report, while randomly checking license plates in the Irving Motel 6 parking lot, Officer Thomas located [his] vehicle, and later observed [him] standing outside a motel room holding his young daughter. However, rather than waiting for verbal or teletype confirmation of the out-of-state Michigan warrant, Officer Thomas exited his patrol vehicle and engaged [him] for identification purposes, placed his left hand on [his] right arm, and asked him "is there someone else in the room because we have a warrant we need to talk to you about." (Thomas BC 90340.mp4). When [he] entered his motel room to communicate the information to his mother Valerie Shaughnessy, Officer Thomas followed [him] through the threshold and entered the motel room without a confirmed warrant and without [his] consent.

At that point, Officer Thomas still had not confirmed the out-of-state Michigan warrant, either verbally or by teletype. Officer Ausen (#989) arrived seconds later to assist Officer Thomas place handcuffs on [him] inside the motel room and, when [he] moved his right hand toward his left pocket, Officer Ausen grabbed [his] right hand, which caused the interior lining of [his] left pocket to be inside-out. Shortly thereafter, Officer Rutledge arrived and assisted Officers Thomas and Ausen handcuff [him] inside his motel room.

. . . .

Officer Thomas ultimately arrested [him] based on his reasonable suspicion that a bag of white powder that fell out of [his] pocket was "probably" cocaine (without conducting a field test prior to [his] arrest or at any time prior to the issuance of the search warrant to establish probable cause that the white powder was actually cocaine), seized the room, and detained its occupants—Valerie Shaughnessy and [his] young child—until a search warrant was drafted, signed, and executed more than four hours later.

Officer Thomas did not receive verbal confirmation of the Michigan warrant until [he] was being strip-searched at the Irving City Jail. It is unknown

when, if ever, Officer Thomas received teletype confirmation of the Michigan warrant.

Def.'s Mot. 2-9.

The Government responds that Defendant Shaughnessy was arrested on the outstanding Michigan warrant for felony sexual assault, not possession of cocaine, and his arrest based on the outstanding Michigan warrant was valid even though not confirmed by the issuing jurisdiction until after his arrest:

> Though his motion is insufficiently briefed on this issue, it appears that [Defendant] Shaughnessy, in various parts of his *Franks*-based motion to suppress, also may complain the basis for IPD approaching him on July 17, 2016[,] was improper under the Fourth Amendment because the warrant was not confirmed. (*See* Motion at 3, 5.) This argument, to the extent [Defendant] Shaughnessy even makes it, also fails because officers are permitted to approach a suspect based solely on an open warrant listed in the NCIC system. [Defendant] Shaughnessy suggests (though he does not argue squarely) that Officer Thomas arrested him based only on reasonable suspicion that the bag of white powder from [his] pocket was cocaine. (Motion at 16.) As a result, [he] implies that his arrest was unlawful and tainted the search-warrant affidavit. (*Id.*)

> In reality, however, Officer Thomas arrested [Defendant] Shaughnessy based on his outstanding felony sexual-assault warrant. Prior to approaching [Defendant] Shaughnessy, Officer Thomas discovered that [his] vehicle was associated with a warrant hit in the NCIC system for a felony sexual assault out of Michigan. (*See* Ex. 1 at 3-4.) Further, Officer Thomas saw that the issuing Michigan jurisdiction would extradite [him] last validated the warrant on March 23, 2016— fewer than four months prior. (*Id.* at 3.) Officer Thomas also learned that [he] had checked into room #124 of the motel using his North Carolina identification card. (*Id.*) When [Defendant] Shaughnessy exited his room, Officer Thomas approached [him] to arrest him pursuant to the felony sexual assault warrant. (*Id.*) Moreover, [Defendant] Shaughnessy does not even contest that the warrant was valid—he only complains that it was not ***confirmed*** at the time Officer Thomas approached him. (Motion at 3, 5.)

Govt. Resp. 23-24.[3]  Although the warrant was not confirmed by teletype ("TTY")[4] before the arresting officers approached and arrested Defendant Shaughnessy on July 17, 2016, the Government contends that the arrest was constitutional because the Fifth Circuit has previously recognized that arresting officers may rely on NCIC information to establish probable cause for an arrest.  For support, the Government relies on *United States v. McDonald*, 606 F.2d 552, 553-54 (5th Cir. 1979); *Brooks v. George County*, 84 F.3d 157, 167 n.12 (5th Cir. 1996); *United States v. Munoz*, 150 F.3d 401, 407, 411-12 (5th Cir. 1998); and *Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir. 1992).

> To this, Defendant replies:

> The Government argues that the Fourth Amendment search and seizure violations raised in [his] Motion to Suppress are baseless because Officer Thomas arrested [him] at the Motel 6 for an out-of-state felony warrant (Gov. Resp. at 23). This is simply not accurate[] and is easily refuted by Officer Thomas's body worn camera footage. In reality, Officer Thomas arrested [him] for the bag of white powder that fell out of his pocket when Officer Thomas and other officers entered [his] motel room without consent and prior to confirming whether the Michigan warrant was for nationwide extradition, as opposed to mere statewide or "instate only" extradition. (Ex. 1-3).

Def.'s Reply 1.  Defendant also asserts in a footnote that the "[s]everal weeks later, on August 10, 2016, the SWIFS Drug Analysis Test Report regarding the bag of white powder that fell out of [his] pocket concluded that "the identity of the material could not be determined." Def.'s Reply 1 n.1.

---

[3] The National Crime Information Center or "NCIC" system is "a computerized index of criminal justice information (i.e.- criminal record history information, fugitives, stolen properties, missing persons). It is available to Federal, state, and local law enforcement and other criminal justice agencies and is operational 24 hours a day, 365 days a year." Govt. Resp. 1 & n.1 (citation omitted).  Additionally, the Government's reference to "*Franks*-based motion to suppress" refers to the standard in *Franks v. Delaware*, 438 U.S. 154 (1983), for a defendant to challenge the truthfulness of factual statements in an affidavit used by law enforcement to establish probable cause for a search warrant. *See id.* at 171-72.

[4] Teletype or "TTY" is one method used by law enforcement to confirm the validity of a warrant hit in the NCIC database.

**Memorandum Opinion and Order – Page 5**

Despite continuing to insist that he was arrested for "the bag of white powder that fell out of his pocket," *id.*, rather than the outstanding warrant, Defendant also argues that information in the NCIC database relied on by the arresting officers was not reasonably trustworthy and, therefore, insufficient to give rise to probable cause that he committed or was committing a crime. Defendant contends that information in the NCIC database regarding his outstanding arrest warrant was untrustworthy because it contained conflicting information as to whether Michigan would extradite him. Defendant, therefore, asserts that law enforcement was required to "immediately 'confirm warrant *and extradition'* with the originating district" before arresting him, and its failure to do so made his arrest unlawful.  *Id.* at 4 & n.3 (emphasis added by Def.).  For support, he cites and quotes *Stephens v. Kubic*, No. 4:08-CV-329-CMC-TER, 2009 U.S. Dist. LEXIS 74609, *20 (D. S.C. June 26, 2009) as follows: "[W]hen someone is wanted, which is called a HIT, the [NCIC] instructions are always that the law enforcement authority must verify the warrant extradition before taking the suspect into custody." Def.'s Reply 4 ("[NCIC]" added by Def.).

Defendant Shaughnessy asserts that, shortly after his arrest, while he was at the jail for processing, "Officer Thomas whispered to the detention officer that he'd just received verbal confirmation of the Michigan warrant," and he also noted "in his offense report that he received the required teletype confirmation."  *Id.* at 4.  Defendant clarifies that he does not dispute whether the warrant was active. Instead, his "objection pertains to [his] unlawful arrest and detention based on an out-of-state warrant that was for in-state pick up [extradition] only."  Def.'s Reply 5 n.4. He, therefore, contends that confirmation of his extradition status prior to his arrest was required.

## 2.  Discussion

The Fourth Amendment prohibits unreasonable searches and seizures. In this regard, the Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Searches are generally considered to be unreasonable unless they are accompanied by a warrant and probable cause. *See id.*; *Horton v. California*, 496 U.S. 128, 133-34 & n.4 (1990); *Almeida-Sanchez v. United States*, 413 U.S. 266, 270 (1973). Probable cause is necessary to effect a warrantless arrest or a detention that is similarly intrusive. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (explaining that the "Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause"). Seizures short of an arrest require reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

The Fourth Amendment is concerned with ensuring that the scope of a given detention "is reasonable under the totality of the circumstances." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc). To be reasonable, a warrantless arrest must ordinarily be supported by probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam). The standard for probable cause is well-established:

> "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" The standard for analyzing probable cause is whether, under the totality of the circumstances, there is a "fair probability" that a crime occurred. "The requisite 'fair probability' is something more than a bare suspicion[] but need not reach the fifty percent mark."

*Thompson v. Hammond City*, No. 20-30056, 2023 WL 155412, at *2 (5th Cir. Jan. 11, 2023) (footnotes and citations omitted).

The court has carefully reviewed the arresting officers' body cam footage relied on by Defendant and disagrees that he was arrested for possessing "the bag of white powder that fell out of his pocket." It is clear that IPD Officer Thomas approached Defendant with the intention of arresting him for the outstanding felony warrant, and, during the course of his arrest for the outstanding warrant, "the bag of white powder . . . fell out of [Defendant's] pocket" while he was being handcuffed. In any event, because the court determines that probable cause existed for Defendant's arrest based on the outstanding Michigan "Felony Warrant,"[5] it makes no difference whether there was also probable cause to arrest him for possession or distribution of cocaine. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that an arrest is proper when there are objective facts establishing probable cause for arrest, even if the arresting officer stated that the defendant was being arrested for another offense for which probable cause was lacking); *Thompson*, 2023 WL 155412, at *2 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause" and constitutionally valid.)). The court, therefore, focuses its analysis on Defendant's argument regarding the lawfulness of his arrest based on the Michigan warrant.

As indicated, Defendant contends that his arrest based on the Michigan Felony Warrant was constitutionally infirm because the arresting officers failed to confirm information in the warrant until after handcuffing and arresting him. His reply, however, makes clear that he does not dispute that the warrant was active when he was arrested, and he acknowledges that law enforcement received confirmation of this shortly after his arrest while he was being processed at the jail. He, instead, contends that the initial NCIC warrant hit was insufficient to give the IPD

---

[5] Def.'s Reply Ex. 1.

officers probable cause to detain and arrest him without first confirming whether Michigan jurisdiction would extradite him.

Defendant's reliance on the *Stephens* case is misplaced and does not support his argument that the IPD officers who arrested him were required to first confirm the extradition status of the Michigan warrant.  In that case, the plaintiff was arrested for parole violations and sued five defendants under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was a pretrial detainee because he was wrongfully denied parole, counsel, and medical treatment. *See Stephens v. Kubic*, No. 4:08-CV-329-CMC-TER, 2009 WL 2601436, at *2-3 (D. S.C. Aug. 20, 2009). The law enforcement defendants moved for summary judgment based on qualified immunity and other grounds and submitted supporting evidence. The magistrate judge issued a report, recommending that the defendants' motion for summary judgment be granted, and this recommendation was accepted by the district court.  *Id.* at *2, 11.

The language in *Stephens* relied on by Defendant is not a legal conclusion or standard, and was not included in the magistrate judge's recommendation; rather the quote—"when someone is wanted, which is called a HIT, the instructions are always that the law enforcement authority must verify the warrant extradition before taking the suspect into custody"—is to the defendants' summary judgment evidence, which contained an affidavit by one of the defendant parole agents detailing the events leading up to the plaintiff's arrest. Moreover, the alleged NCIC instruction alluded to in the affidavit—that officers first verify the warrant extradition before an arrest—is not a legal rule or statement of law. It, instead, appears that this is simply a law enforcement protocol or procedure followed by the parole agents in this case that may or may not have been recommended by the NCIC.

Nothing in *Stephens*, or any of the other cases cited by the parties or found by the court, stands for the proposition that probable cause for an arrest—whether "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the *suspect had committed or was committing an offense*"[6]—is lacking unless the arresting officer verifies the extradition status of a warrant.  When relevant, extradition can be one of many facts and circumstances considered by courts in determining whether the arresting officer had sufficient information to believe that a suspect had committed or was committing a crime, but it is not a requirement or a dispositive factor in a probable cause analysis.  *See, e.g., United States v. Goetz*, 153 F. App'x 918, 920 (5th Cir. 2005).[7]

As the Government corectly notes, the Fifth Circuit has previously held that, "[w]hile NCIC printouts are not alone sufficient Evidence to permit Conviction, the cases uniformly

---

[6] *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (emphasis added).

[7] In *Goetz*, law enforcement had reasonable information when they arrested the defendant that he was "wanted on a California parole warrant for a felony offense, and that California would seek extradition." *Id*. at 920. The court noted that law enforcement had confirmed this information through NCIC but, nevertheless, concluded that "[t]he cases uniformly recognize that NCIC printouts are reliable enough to form the basis for the reasonable belief [that] is needed to establish probable cause." *Id*. (quoting *McDonald*, 606 F.2d at 553-54). The court also concluded that, under the Uniform Criminal Extradition Act, Tex. Code Crim. Proc. Art. 51.13, § 14 (West 2005), law enforcement officers in Texas "may arrest a person 'without a warrant upon reasonable information that the accused stands charged in the court of a State with a crime punishable by death or imprisonment for a term exceeding one year.'" Thus, even under the Uniform Criminal Extradition Act adopted by Texas, extradition status may be a factor that law enforcement officers consider in deciding whether to arrest a suspect, but it is not a prerequisite for an arrest.  Only probable cause that the defendant has been charged with or committed a felony is required, and an out-of-state felony warrant is sufficient to establish probable cause. *See Landry v. A-Able Bonding, Inc*., 75 F.3d 200, 205-06 (5th Cir. 1996). In *Landry*, the Fifth Circuit noted:

> Possession of a valid Louisiana arrest warrant is insufficient, in and of itself, to render an arrest in Texas lawful. Texas law requires, among other things, that a lawful arrest warrant issue in the name of "The State of Texas." TEX.CODE CRIM.PROC.ANN. art. 15.02. **However, for purposes of determining the legality of an arrest under provisions allowing arrests without a warrant, courts do consider the possession of a foreign warrant as evidence that the possessor had reasonable cause to believe the person named in the warrant committed a crime. *See, e.g., Stallings v. Splain*, 253 U.S. 339, 341-42 (1920) ("If the bench warrant issued in Wyoming was not effective as a warrant within the District of Columbia, . . . [i]t would, at least, serve as evidence that Splain had reasonable cause to believe that a felony had been committed by Stallings.").**

*Id*. (emphasis added).

**Memorandum Opinion and Order – Page 10**

recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief [that] is needed to establish probable cause for arrest." *McDonald*, 606 F.2d at 553-54 (citations and footnote omitted).  Defendant attempts to distinguish *McDonald* by arguing that the finding of probable cause to arrest in that case did not turn on the NCIC printout alone, but, instead, on the arresting officers' review of "the NCIC printout *and* an FBI wanted flyer" for the defendant.  Def.'s Reply 2-3 (emphasis added by Def.).  The court disagrees.  If more than an NCIC printout was needed for probable cause to arrest, the court in *McDonald* would not have concluded that NCIC printouts are reliable enough to establish probable cause for arrest.  *McDonald*, 606 F.2d at 554 (citations omitted).

Based on one of its prior opinions, the Fifth Circuit similarly concluded that the arresting officer had probable cause for an arrest based only on information obtained from a computer check, which revealed an outstanding warrant for the defendant's arrest.  *Duckett*, 950 F.2d at 280 (citing *McDonald*, 606 F.2d at 553-54 ("NCIC printout indicating an outstanding warrant suffices to establish probable cause for that person's arrest"); and *United States v. Roper*, 702 F.2d 984, 989 (11th Cir. 1983) ("officer had probable cause to arrest where officer radioed NCIC and learned of warrant").  That the officer in *Duckett* did not confirm the validity of the warrant by teletype until the next day did not affect the court's probable cause determination, even though the defendant himself and his mother had protested before and after his arrest that the warrant had been withdrawn and was no longer active.  *Duckett*, 950 F.2d at 280.  The court in *Duckett* determined that the warrant under which the defendant was arrested and detained met the standards of the Constitution because it was facially valid and, therefore, gave the police officer probable cause to arrest Duckett.  *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979)).

To support his argument that more than an NCIC printout is required for probable cause to arrest, Defendant also cites *United States v. Towne*, 870 F.2d 880, 884 (2d Cir. 1989), which he asserts involved a "finding [of] probable cause to arrest where [the] officer learned of [an] out-of-state warrant after conducting a background check on NCIC, contacted out-of-state authorities to confirm [the] warrant, and requested and received [a] certified copy of [the] warrant before arresting the defendant." Def.'s Reply 2-3.  In *Towne*, the court agreed with the district court that, despite the mere suspicion of the defendant's Vermont parole officer that the New Hampshire charges against him had been resolved, the arresting officer had probable cause to arrest given his three-prong inquiry in confirming the active status of the New Hampshire fugitive warrant.  Unlike *Towne*, the arresting officers in this case had no reason to question whether the Michigan felony warrant for Defendant was active, and Defendant acknowledges that the warrant was active at the time of his arrest.  Defendant instead takes issue with the extradition status of the warrant, which the court has already determined did not affect whether the arresting officers had reason to conclude that he had committed an offense based on NCIC outstanding warrant hit.

Defendant also cites *United States v. Bevans-Silva*, 2017 U.S. Dist. LEXIS 194289, *3 (S.D. Ga. Nov. 27, 2017).  He contends that this case stands for the proposition that, "while the NCIC report's blatant warning not to arrest prior to confirmation from the issuing agency applied only to one particular section of the NCIC report, the unqualified section of the NCIC report provided sufficient probable cause for arrest." Def.'s Reply 3.  Defendant further asserts that:

> Here, after observing [him] standing outside his motel room holding his young daughter, Officer Thomas approached [him], placed his hand on him, then followed [him] into his motel room. Officer Ausen, who was also awaiting the same warrant confirmation while parked alongside Officer Rutledge, followed Officer Thomas's vehicle to assist with [his] arrest. Upon exiting his patrol vehicle, at 0:32 on his body worn camera, Officer Ausen stated "God****it" (Gov. Resp. Ex. 5), in

what can only be interpreted as frustration that his colleague had jumped the gun, and not confirmed that Michigan would, in fact, extradite [him].

Def.'s Reply 3.

It is not clear why Defendant believes *Bevans-Silva* supports his argument that the officers who arrested him lacked probable cause to believe he had committed a criminal offense because they did not confirm the extradition status of the felony warrant. The *Bevans-Silva* opinion cited by Defendant is an order involving a motion to suppress that was entered by the magistrate judge, but nothing was decided in that order. *See United States v. Bevans-Silva*, No. 4:16-CR-352-LGW-CLR (Nov. 27, 2017).[8] In the order, the magistrate judge detailed the facts leading to the defendant's arrest. *Id*. at 1-4.

According to the order, police officers encountered the defendant after a minor traffic accident in Savanna, Georgia, entered his identification information into a police database, which indicated that he was a "wanted person," who was regarded as "armed and dangerous" with "violent tendencies." *Id*. at 1-2. The same report indicated that the defendant also had an issue with his probation or supervised release status, and the portion of the report concerning his probation or supervised release status was preceded by a warning "not [to] arrest based on this information" and an instruction to "please contact supervising agency." *Id*. at 2. The parties agreed that the defendant was arrested based on information in the report, but because it appeared that the parties disagreed whether the warning applied to the entire report or just the issue involving the status of the defendant's probation or supervised release, the magistrate judge directed the defendant to brief this ambiguity in his motion to suppress. *Id.* at 2-3.

---

[8] The court was unable to find this order on Westlaw. It obtained a copy of the order via PACER and the electronic docket sheet in *Bevans-Silva*. *See* 4:16-CR-352-LGW-CLR (Doc. 72).

**Memorandum Opinion and Order – Page 13**

In this regard, the magistrate judge quoted the defendant's motion to suppress and noted:

> Bevans-Silva appears to argue that the warning not to arrest him applied to all of the information in the report, not just the information concerning his probation or supervised release status. *See* doc. 64 at 2 (noting that the information in the report "came with a blatant warning not to arrest, but, rather, to await confirmation from the issuing agency.").

*Bevans-Silva*, No. 4:16-CR-352-LGW-CLR (Doc. 72 at 3). Thus, the portion of this order quoted and relied on by Defendant regarding the "blatant warning not to arrest" before "confirmation from issuing agency" is from *Bevans-Silva*'s motion to suppress, not any ruling or reasoning by the court in *Bevans-Silva*. As a result, the quote is misleading, as it does not accurately characterize the facts or the law in *Bevans-Silva* as set forth in the magistrate judge's order.

It also fails to accurately characterize the magistrate judge's comments regarding the Government's argument, which the judge found to be consistent with the report and case law, including Eleventh Circuit authority affirming *McDonald*:

> The Government argues (and Bevans-Silva cites nothing to contradict) that the unqualified portion of the report alone provided sufficient probable cause for his arrest. *See id.* at 1-2 (citing *United States v. McDonald*, 606 F.2d 552, 553-54 (5th Cir. 1979); *United States v. Roper*, 702 F.2d 984, 989 (11th Cir. 1983) (affirming *McDonald*'s holding that "'NCIC [information is] reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest.'")).
>
> Here, the face of the report is consistent with the Government's construction. There is a clear distinction between the sections disclosing, on the one hand, that Bevans-Silva was wanted and possessed of violent tendencies and, on the other, that he had an outstanding probation issue. *See* doc. 64-1 at 4.

*Bevans-Silva*, No. 4:16-CR-352-LGW-CLR (Doc. 72 at 3-4). The magistrate judge went on to note that, "[e]ven crediting Bevans-Silva's argument that the warning precludes the probation information from supporting probable cause for his arrest, it is not clear that he contests that the other information isn't sufficient." *Id.* at 4. For this reason, the magistrate judge gave Bevans-Silva an opportunity to "clarify that contention and his basis for it." *Id.*

**Memorandum Opinion and Order – Page 14**

Moreover, like the undersigned, the magistrate judge in *Bevans-Silva* similarly concluded that the validity of the defendant's arrest turned on whether there was probable cause, not solely on other matters pertaining to his probation or supervision status. Accordingly, whether the defendant was arrested for a matter related to his supervision or other conduct that gave rise to issuance of the warrant was of no moment, as long as the arrest was supported by probable cause:

> Bevans-Silva points out that video recordings from the arresting officers' body cameras shows that the arrest occurred while "they were awaiting confirmation of the warrant information[.]" Doc. 64 at 2. That suggests a contention (although it does not make it explicit) that the arrest was based on the probation or supervised release status. Regardless, the officers' subjective reason for the arrest is irrelevant. *See Devenpeck* [, 543 U.S. at 153] (an arrest is proper if there are objective facts establishing probable cause for arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *see also United States v. Green*, 2015 WL 6755001 at * 3 (S.D. Ga. Nov. 4, 2015) ("[A] warrantless arrest is reasonable under the Fourth Amendment if the objective facts known to the officer establish probable cause to believe that *any* crime has been committed; the officer's 'subjective reason for making the arrest' is 'irrelevant' to the Fourth Amendment inquiry."[)] (quoting *Devenpeck*, 543 U.S. at 153)). The propriety of the arrest turns, therefore, on whether there was any probable cause, not solely on whether the probation/supervised release status provided it.

*Bevans-Silva*, No. 4:16-CR-352-LGW-CLR (Doc. 72 at 2 n.1).

For all of these reasons, the cases relied on by Defendant do not lend support to his argument that probable cause was lacking here because the IPD officers did not inquire about and confirm his extradition status before arresting him. Defendant Shaughnessy also relies on information regarding his extradition that was obtained by law enforcement status after his arrest. For example, one law enforcement report states that "[f]ollow up investigation revealed the warrant was erroneously listed as full extradition; the warrant was for in-state pick up only. SHAUGHNESSY's warrant has since been changed to reflect such in NCIC." Def.'s Reply Ex. 2

at 3.  The existence of probable cause, however, is determined at the moment of arrest, not in hindsight.  *See Florida v. Harris*, 568 U.S. 237, 249 ("[Courts] do not evaluate probable cause in hindsight.").  Thus, this and other information obtained by law enforcement after the fact is not relevant to whether the arresting police officers had probable cause when they arrested Defendant.

In addition, Defendant contends that, six months before his arrest, he was stopped by IPD police officers and arrested based on "an extraditable warrant out of Michigan," but he was released because, while en route to the jail, the officers obtained information from NCIC that "Michigan would not extradite [him]."  Def.'s Reply 5-6.  Defendant contends that information regarding his arrest and release on this date is contained in an April 28, 2017 IPD offense report. *Id.* at 5 (citing Ex. 6 at 3-4).  In reviewing the evidence Defendant submitted in support of his motion and reply, the court was unable to find an April 28, 2017 offense report or any reference to such a report.  Regardless, Defendant was arrested in July 2016, not 2017.  Even assuming that the reference to 2017is a typographical error intended to refer to a 2016 offense report, there is no evidence that IPD Officer Thomas or the other arresting officer was aware of the information in this report when they arrested him, and, for the reasons explained, information regarding his extradition status is not dispositive of whether they had a reasonable belief that an active, valid felony warrant for his arrest existed.

To the extent that Defendant Shaughnessy also contends that the officers lacked probable cause for his arrest because they did not receive confirmation of the warrant's active status until after his arrest, this argument also fails under *McDonald* and *Duckett*.  It is undisputed that as of July 17, 2016, there was an outstanding felony warrant out of Michigan for Defendant's arrest; that, in running a registration inquiry on a vehicle parked in the parking lot of a Motel 6 in Irving, Texas, IPD Officer Thomas learned that the vehicle was owned by Defendant Shaughnessy; and

**Memorandum Opinion and Order – Page 16**

that an NCIC warrant check conducted by Officer Thomas revealed that Defendant had an outstanding felony warrant for sexual assault out of Michigan, which was validated on March 23, 2016. IPD officers also confirmed that he had checked into motel room #124 using a North Carolina state identification card, and after observing him exit room #124, they approached and arrested him.

These objective facts known to the police officers at the time of Defendant Shaughnessy's arrest are sufficient to establish probable cause to believe that he had committed the felony of sexual assault. That the police officers did not obtain confirmation of the warrant or Defendant's extradition status until shortly after his arrest does not affect the facial validity of the warrant based on information in the NCIC database or the court's probable cause determination. Moreover, Defendant's evidence does not show that the IPD officers had reason to doubt the validity of the felony warrant information obtained via NCIC before arresting him, and his contentions to the contrary that information in the NCIC printout was untrustworthy are conclusory and unsupported. Accordingly, Defendant is not entitled to suppression of any evidence based on the validity of his arrest or detention.

### B.  Search Warrant Affidavit—*Franks* Argument

Defendant also seeks to suppress evidence seized by law enforcement on the grounds that the July 17, 2016 search warrant affidavit authored by IPD Investigator T. Hilton: (1) was tainted by law enforcement's prior conduct in arresting him, which he contends was unconstitutional; and (2) contains four materially false statements that misled the associate municipal judge into believing that there was probable cause for the search warrant.  *See* Govt. Ex. 2.  The court's prior discussion resolves Defendant's argument regarding the lawfulness of his arrest.  The court, therefore, focuses it remaining analysis on Defendant's argument that evidence should be

suppressed under *Franks v. Delaware* because probable cause for the July 17, 2016 search warrant was lacking, given the inclusion of allegedly materially false statements in Investigator Hilton's affidavit.

"A valid search warrant may be issued only upon a finding of probable cause." *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). Information necessary to establish probable cause "must be contained within a written affidavit given under oath." *Id.* Probable cause for a search warrant "does not require proof beyond a reasonable doubt' or a "prima face showing" of criminal activity; rather, "only the probability . . . criminal activity is the standard of probable cause." *Id.* (citation and internal quotation marks omitted). In *Franks*, the Supreme Court recognized a criminal defendant's limited right under the Fourth Amendment to be free from search pursuant to a warrant that lacks probable cause due to knowing or reckless misstatements. 438 U.S. at 155-56. The *Franks* rule is of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167. Further, the affidavit supporting a search warrant is presumptively valid. *Id.* at 171.

To establish a violation under *Franks*, Defendant Shaughnessy must show that (1) the affidavit supporting the search warrant contained false statements or material omissions; (2) the affiant (Investigator Hilton) made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause. *See id.; see also United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020) (citing *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017)). Falsehoods are material or necessary to the finding of probable cause if the affidavit is "insufficient to establish probable cause" after setting aside the materially false statements. *Franks*, 438 U.S.

at 156. For the reasons that follow, Defendant Shaughnessy has failed to carry his burden under *Franks*.

He argues that narcotics Investigator Hilton's affidavit, which was used to obtain the warrant to search his motel room and vehicle, includes four material misrepresentations. The search warrant affidavit states in pertinent part:

> On July 17, 2016, at approximately 3:10 PM, Irving Police Officer J. Thomas #556 ran a registration inquiry on a vehicle parked in the parking lot of the Motel 6/Studio 6 Extended Stay located at 3950 West Airport Freeway, Irving, Dallas County, Texas. The vehicle returned to the person listed as number 1 in number 3 above (Sean Michael Shaughnessy). NCIC North Carolina vehicle registration returns include the name and date of birth of the registered owner. Officer Thomas ran a wants/warrants check on Shaughnessy via NCIC. The wants/warrants check revealed that Shaughnessy had an outstanding felony warrant for sexual assault out of Bay County Central Sheriffs Office, Bay City, Michigan. The warrant hit showed that Michigan would extradite Shaughnessy, and the warrant was validated on March 23, 2016. Officers discovered that Shaughnessy was checked into the location listed in number 1 above (room #124) via the hotel registry using his North Carolina state issued identification card.

> While officers were waiting for warrant confirmation only done by TTY (teletype). Shaughnessy exited the location listed in number 1 above holding his two[-]year-old daughter. When officers confronted Shaughnessy, **he attempted to retreat** into the location listed in number 1 above. As officers were detaining him, Officer Thomas grabbed his left hand. When Irving Police Officer Ausen #989 told Shaughnessy to take his hands of his pockets, **Shaughnessy threw a plastic bag containing 15.1 grams of cocaine on the floor**. Shaughnessy also had white powder residue about his nostrils.

> Irving Police Officer Rutledge #970 seized the plastic bag of cocaine and placed it into a blue rubber glove.

> **Shaughnessy was arrested for the outstanding sexual assault warrant, which was confirmed**.

> Shaughnessy was transported to the Irving Jail. While at the Irving Jail, Irving Detention Officer Hopkins #C2040 searched Shaughnessy and located a blue, plastic snorting straw approximately four inches long in Shaughnessy's right, front shorts pocket. The snorting straw had white powder on both ends.

> **Irving Police Investigator Fleischer #1095 field tested the cocaine and obtained a positive result.**

**Memorandum Opinion and Order – Page 19**

>    Based on your affiant's training and experience. he believes 15.1 grams of cocaine is more than a user quantity of cocaine. Your affiant believes Shaughnessy possessed the cocaine with the intent to distribute it.
>
>    Officers Ausen and Rutledge remained at the scene while a search warrant was requested.

Govt. Ex. 2 at 5-6 (emphasis added). Defendant asserts that the following statements in Investigator Hilton's affidavit, which are highlighted and bolded above, are false and material to a probable cause finding: (1) Defendant Shaughnessy "attempted to retreat" into his motel room when officers initially approached him; (2) Defendant "Shaughnessy threw a plastic bag containing 15.1 grams of cocaine on the floor"; (3) Defendant Shaughnessy "was arrested for an outstanding sexual assault warrant, which was confirmed"; and (4) IPD "Investigator Fleischer #1095 field tested the cocaine" that came from Defendant Shaughnessy's pocket "and obtained a positive result."

The Government argues, and the court agrees, that the first three of these statements are not material to a finding of probable cause of criminal activity as required for the search warrant. In other words, even setting aside these statements, the other factual statements in the affidavit are sufficient to support a finding of probable cause.  Accordingly, Defendant has not satisfied his burden under *Franks* as to these three statements.

Regarding the fourth statement, Defendant contends that it must be false because of the differences in how Investigator Fleisher documented the alleged field test of the powder that fell out of his pocket during his arrest and the way Investigator Hilton and other officers documented the field tests of four separate bags containing powdery substances that were found in his motel room during the subsequent execution of the search warrant. Defendant asserts that the execution of the search warrant was videoed, whereas there is no video footage or photos of Investigator Fleischer field testing the powder that fell out of his pocket.  Defendant further asserts that one

field test kit or one of the four field test kits used during the execution of the search warrant was saved, but the field test kit allegedly used by Investigator Fleischer was not saved.  In this regard, Defendant argues:

> Despite the officers purportedly using five (5) field-test kits during this investigation, including the positive field-test kit purportedly performed on the bag of white powder that fell out of [his] pocket referenced in the Affidavit for the search warrant, those field test kits were not preserved and no longer exist. For some unknown reason, *only one field test kit was preserved in evidence*, and that was the field test kit reflected in the cellular phone video footage of the search warrant execution.

Def.'s Mot. 18.  In addition, Defendant Shaughnessy notes that none of the field tests conducted by law enforcement is consistent with the lab tests that were conducted one year later, which concluded that the "material contained alpha-ethylaminoheanophenone" but not cocaine.  Def.'s Mot. 13 n.12.

The Government acknowledges that the fourth statement regarding the positive field test is material, but it disputes whether the statement is false, "let alone intentionally or recklessly false" and contends that Defendant's falsity assertions are baseless and amount to nothing more than a conspiracy theory that is unsupported by evidence. Govt. Resp. 17-19.   In addition, the Government contends that Defendant ignores the evidence associated with this field test, including a time stamped IPD property report that refers to this field test as item number 3, as well as the property tag for this field test and Officer Thomas's offense report, which similarly refer to this evidence as item number 3.

The Government further asserts that:

> during the time after [Defendant] Shaughnessy's arrest, and before the search-warrant execution, an IPD body camera reflected an officer telling [his] mother that the substance tested positive for cocaine. (Ex. 8 (IPD Bodycam Footage).) The body-camera footage was captured at approximately 5:55 p.m., prior to the search warrant being executed. (Ex. 8.) The officer informed [Defendant] Shaughnessy's

mother, "It tested positive for cocaine . . . It's fifteen grams of cocaine." (Ex. 8 at 13:16-13:25.)

The Government argues that "[t]his is further proof that the substance [Defendant] Shaughnessy dropped . . . was field-tested and supported the affidavit in support of the search warrant." Govt. Resp. 16.

To this last argument, Defendant replies: "[T]he Government does not include the entirety of the conversation, in which the officer concluded by stating: 'No *it wasn't a field test*, it's actually in the narcotics lab at the station.'" Def.'s Reply 6 (citing Gov. Resp. Ex. 8 at 14:01) (emphasis added by Def.).

The court agrees with the Government that Defendant's argument—that the powdery substance that fell from his pocket was not field tested by Investigator Fleischer or anyone else before the issuance of the search warrant—is based on speculation and unsupported conjecture. If the subsequent lab test of this substance concluded that it was not cocaine, this lends some support to Defendant's assertion regarding the falsity of the statement in Investigator Hilton's affidavit that Investigator Fleischer obtained a positive cocaine result for the same substance. Defendant also presented evidence to show that Investigator Fleischer admitted in a deposition to making a "mistake" in a prior case in not accurately reporting that the defendant had made the inculpatory statement to the detectives executing a search warrant that "the gun is under the bed." Def.'s Mot. 12 n.10.

The fatal flaw with this particular argument and the bases for Defendant's *Franks* motion, however, is that "*Franks* decided that the Fourth Amendment does not require suppression of evidence whenever the warrant authorizing the seizure is supported by any inaccurate or false statements." *United States v. Wake*, 948 F.2d 1422, 1429 (5th Cir. 1991). Suppression is only required when the defendant comes forward with proof that material statements in an affidavit

were made with "deliberate falsity or reckless disregard of the truth." *Id.* Thus, mistakes and inaccurate or false statements are insufficient.

Moreover, Defendant does not offer any proof or even allege that the statement in Investigator Hilton's affidavit that—Investigator Fleischer #1095 field tested the cocaine and obtained a positive result—was made with "deliberate falsity or reckless disregard of the truth." *See id*. At issue here is not whether Investigator Fleischer made the statement with "deliberate falsity or reckless disregard of the truth;" rather, as *Franks* applies only to the affiant's statements, Defendant needs to prove that Investigator Hilton "acted with deliberate falsehood or reckless disregard for the truth" when he included this statement of fact in his affidavit. *Franks*, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant[.]"); *Wake*, 948 F.2d at 1429 ("[T]he person whose deliberate falsehood or reckless disregard for the truth at issue is . . . the affiant[.]").

It is undisputed that Investigator Hilton executed the search warrant, but he was not present when Defendant was arrested or when Investigator Fleischer allegedly conducted the field test and obtained a positive result for cocaine. Consequently, he had to rely on information obtained from others in preparing his affidavit. Defendant acknowledges as much and notes that it is unclear to him "whether Investigator Hilton received this information [about the positive cocaine field test] from Officer Thomas or Investigator Fleischer." Def.'s Mot. 11 n.5.

Officer Thomas states in his incident report that "Inv Fleischer #1095 did a narcotics field test on the white powder [that fell out of Defendant's pocket] and received a positive response for cocaine." Govt. Ex. 1. This statement is similar to the one included in Investigator Hilton's affidavit. Assuming that Investigator Hilton relied on this statement in Officer Thomas's report, Defendant does not point to any evidence that Investigator Hilton knew the statement was false or

was aware of any information that would have led him to question the veracity of the statement at the time he included the similar statement in his affidavit to obtain the warrant to search Defendant's motel room and vehicle. Accordingly, even assuming as Defendant contends that this statement is false, because there is no evidence of deliberate falsehood or reckless disregard for the truth by Investigator Hilton, the court need not consider whether probable cause would exist if the allegedly false or inaccurate statements were excised from his affidavit. *See Wake*, 948 F.2d at 1429. Defendant's request to suppress evidence under *Franks*, therefore, fails.

## C. Defendant's Request for Evidentiary Hearing

Defendant Shaughnessy's request for an evidentiary hearing under *Franks* fails for similar reasons. As he acknowledges in his Motion, hearings under *Franks* are limited:

> The *Franks* rule is of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." [*Franks*, 438 U.S.] at 167. Under *Franks*, the affidavit supporting a search warrant is presumptively valid. *Id.* at 171. Therefore, . . . to receive an evidentiary hearing on a suppression issue, a defendant who attacks the validity of such an affidavit must make a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *Id.* at 171; *see also United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996).

> The Supreme Court discussed the meaning of a "substantial preliminary showing" by stating:

>> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant. Finally,

> if these requirements are me, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72.

Def.'s Mot. 20-21. For the reasons already explained, Defendant has not made the substantial preliminary showing required by *Franks* to warrant a hearing.

Likewise, Defendant is not entitled to a hearing on his non-*Franks* arguments. "Hearings on motions to suppress are not discovery proceedings." *United States v. Harrelson*, 705 F.2d 733, 738 (5th Cir. 1983). They "are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *Id.* For this reason, requests for evidentiary hearings are not granted as a matter of course; rather, they are only granted "when the defendant alleges sufficient facts which, if proven, would justify relief." *Id.* at 737 (citations omitted); *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir. 1984) (citations omitted). "Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be "'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *Harrelson*, 705 F.2d at 737 (citations omitted). "General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice." *Id.*

As previously discussed, because the court determines that there was probable cause to arrest Defendant on the outstanding felony warrant, it does not matter whether there was also probable cause to arrest him for the powdery substance that fell out of his pocket or whether the police officers intended to arrest him for possessing or distributing cocaine. *See Devenpeck*, 543 U.S. at 153 (an arrest is proper if there are objective facts establishing probable cause for arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause). Further, Defendant's argument regarding the validity of the warrant

does not turn on any material disputed facts; rather, his argument in this regard is a legal one. Accordingly, a hearing on his Motion to Suppress with respect to the validity of his arrest is not required.[9]

## IV.   Conclusion

For the reasons explained, the court **grants** Defendant's Motion for Leave to File Reply Brief (Doc. 99); and **denies** his Motion to Suppress (Doc. 92).  In light of the court's ruling, the validity of Defendant's arrest on July 17, 2016, and the July 17, 2016 search of his person, motel room, and vehicle are not to be discussed by the parties, unless it is briefly mentioned as background information or is required for contextual purposes.

**It is so ordered** this 4th day of May, 2023.

Sam A. Lindsay
United States District Judge

---

[9] The Government did not request a hearing and argued that Defendant was not entitled to one.

**Memorandum Opinion and Order – Page 26**